# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RAY HODGE & ASSOCIATES, LLC** | * | **CIVIL ACTION NO. _____** |
| | * | |
| **Plaintiff,** | * | |
| | * | **SECTION: _____** |
| **v.** | * | |
| | * | |
| **UNGLESBY AND GREENBERG,** | * | **MAGISTRATE: _____** |
| **LLC; LANCE C. UNGLESBY; AND** | * | |
| **LOGAN H. GREENBERG** | * | |
| | * | **JURY DEMAND** |
| **Defendants.** | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## VERIFIED COMPLAINT
## FOR DECLARATORY RELIEF AND DAMAGES

NOW INTO COURT, through undersigned counsel, comes Plaintiff Ray Hodge & Associates, LLC ("Plaintiff" and/or "RHA"), who files this Verified Complaint for Declaratory Relief and Damages ("Complaint") against Unglesby and Greenberg, LLC; Lance C. Unglesby; and Logan H. Greenberg (collectively, the "Defendants"). In support of its Complaint, Plaintiff alleges the following:

## I.  GENERAL NATURE OF THE CLAIMS

### 1.

This case is about the Defendants' inducement of Plaintiff's agreement through misrepresentation and omission of truthful information and Defendants' ultimate failure to fulfill their promises, assurances, and contractual obligations to Plaintiff on which Plaintiff relied as part

of their joint legal representation of 43 separate victims injured as a result of Bayer AG's Essure birth control device.

2.

Defendants' conscious decision to misrepresent and omit truthful information to Plaintiff in the inducement of a joint collaboration, to make certain promises and assurances, and then to abandon their obligations to Plaintiff after securing thousands of dollars in advance payments from Plaintiff and once it became clear to Defendants that the legal costs and expenses to be borne contractually by the Defendant law firm would exceed its recovery.

3.

Plaintiff relied on Defendants' repeated promises and assurances and clear and unequivocal expressed written contractual obligations confirming that, in the event that additional counsel is needed in the prosecution of the Essure claims, Defendant Unglesby & Greenberg, LLC alone would pay for such additional counsel fees. Despite amicable demand, Defendants have failed to meet their obligations to Plaintiff and/or to otherwise cure the financial damages endured by Plaintiff who was forced to satisfy Defendants' obligations out of his share of the settlement proceeds resulting from the successful representation of the clients Plaintiff and Defendants together agreed to jointly represent.

4.

Defendants' actions give rise to numerous claims, as outlined below, including, but not limited to breach of contract, detrimental reliance, fraud against a party to a contract, general fraud, and individual liability on the part of Defendant Unglesby and Defendant Greenberg, all of which are actionable under Louisiana law, based upon the foregoing allegations.

## II.  THE PARTIES

5.

Plaintiff Ray Hodge & Associates, LLC is a Kansas Limited Liability Corporation engaged in the practice of law and organized and existing under the laws of the State of Kansas, with a principal place of business located in Wichita, Kansas.

6.

Plaintiff is comprised of two members:  (1) Ryan E. Hodge; and (2) Ray Hodge.  Ryan Hodge currently lives in Wichita, Kansas.  Therefore, he is a citizen of Kansas as he is domiciled in and a resident of the State of Kansas.  Ray Hodge also currently lives in Wichita, Kansas.  Therefore, he, too, is a citizen of Kansas as he is domiciled in and a resident of the State of Kansas.

7.

Defendant Unglesby and Greenberg, LLC is a Louisiana Limited Liability Corporation engaged in the practice of law and organized and existing under the laws of the State of Louisiana, with a principal place of business located in Metairie, Louisiana.

8.

Defendant Unglesby and Greenberg, LLC is comprised of two members:  (1) Lance C. Unglesby; and (2) Logan H. Greenberg.  Upon information and belief based upon the Louisiana Secretary of State's records, Mr. Unglesby currently lives in Metairie, Louisiana.  Therefore, he is a citizen of Louisiana as he is domiciled in and a resident of the State of Louisiana.  Upon information and belief based upon the Louisiana Secretary of State's records, Mr. Greenberg also currently lives in Metairie, Louisiana.  Therefore, he, too, is a citizen of Louisiana as he is domiciled in and a resident of the State of Louisiana.

9.

Defendant Lance C. Unglesby, in his individual capacity, is a Louisiana-licensed attorney who practices law in the State of Louisiana.  Upon information and belief based upon the Louisiana Secretary of State's records, Mr. Unglesby currently lives and works in Metairie, Louisiana.  Therefore, Mr. Unglesby, in his individual capacity, is a citizen of Louisiana.

10.

Defendant Logan H. Greenberg, in his individual capacity, is a Louisiana-licensed attorney who practices law in the State of Louisiana.  Upon information and belief based upon the Louisiana Secretary of State's records, Mr. Greenberg currently lives and works in Metairie, Louisiana.  Therefore, Mr. Greenberg, in his individual capacity, is a citizen of Louisiana

### III.   JURISDICTION AND VENUE

11.

The Court maintains subject matter (diversity) jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount of controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the suit is between citizens of different states.

12.

As sufficiently alleged and demonstrated on the face of the Complaint, the value at issue in this litigation is approximately $549,873.72, exclusive of interest and costs, as a result of amounts owed by Defendants to Plaintiffs pursuant to a series of joint representation agreements executed between the parties.  As such, the amount of controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, for purposes of to 28 U.S.C. § 1332(a)(1).

13.

Plaintiff, by virtue of the citizenship of the members of the limited liability company, is a citizen of the State of Kansas.  Defendant Unglesby and Greenberg, LLC, by virtue of the citizenship of its members, is a citizen of the State of Louisiana.  Defendant Unglesby and Defendant Greenberg, in their respective individual capacities, are citizens of the State of Louisiana.  As such, this suit is between citizens of different states for purposes of  28 U.S.C. § 1332(a)(1).

14.

The Court also maintains subject matter jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure for the purpose of determining a question of actual controversy between the parties as more fully outlined in this Complaint.

15.

An actual justiciable controversy between Plaintiff and Defendant Unglesby and Greenberg, LLC exists within the meaning of 28 U.S.C. § 2201 regarding the rights and obligation of Defendants under the written contracts at issue, including whether Defendants are required to reimburse Plaintiff for the costs and expenses necessitated by the hiring of additional counsel in the prosecution of Essure claims; costs and expenses to which Defendant Unglesby and Greenberg, LLC contractually obligated itself to pay.

16.

Venue is proper in the United States District Court, Eastern District of Louisiana, pursuant to 28 U.S.C. § 1391 because (1) all Defendants regularly conduct business within this judicial district; (2) Defendant Unglesby and Greenberg, LLC maintains its corporate residence and

principal office in this District; (3) Defendants executed the agreements at issue in this litigation in this District; and (4) Defendants' actions giving rise to this litigation occurred in this District.

17.

For many of these same reasons, this Court has personal jurisdiction over the Defendants since all Defendants (1) are citizens of Louisiana; (2) regularly transact business in Louisiana; (3) caused injury and/or damage in Louisiana; (4) regularly does and solicits business and/or otherwise engages in persistent course of business conduct in Louisiana.

## IV.  FACTS RELEVANT TO THE CLAIMS AT ISSUE

### Defendants Pursue Plaintiff to
### Market, Gather, and Prosecute Essure Litigation Claims

18.

At various times throughout 2017, Defendant Unglesby, on behalf of Defendant Greenberg and their law firm, Defendant Unglesby Greenberg, LLC's ("UG"), contacted and approached Mr. Ryan Hodge, a member of Plaintiff Ray Hodge & Associates, LLC, to persuade Mr. Hodge and his firm, Ray Hodge & Associates, LLC ("RHA"), to collaborate with and join UG's efforts to market, gather, and prosecute litigation claims jointly on behalf of injured persons against Bayer AG and/or other related defendants for damages caused by Bayer AG's Essure birth control device.

19.

Essure is a permanent, non-surgical birth control solution for women commonly used to prevent fertilization by inserting a coil designed to induce fibrosis and block the fallopian tubes.  The product is manufactured by a company owned by Bayer called Conceptus Inc.

20.

Essure was marketed as a revolutionary development in female birth control because no surgery or incision was necessary. Instead, the Essure device could be inserted by a catheter passed through the vagina and cervix and into the uterus in fewer than seven minutes.  General anesthesia was not required, and the patient could go home soon after the procedure. Essure devices that malfunction can create medical complications that can be dire and even fatal. These complications are especially severe if the Essure device moves out of the fallopian tube – a process known as migration – or if the Essure device fails to prevent a pregnancy.

21.

Essure lawsuits are mass tort claims against Bayer based on alleged complications from their permanent birth control device.  Essure has been alleged to have caused thousands of women to suffer from debilitating pain, perforated organs, and countless other serious medical complications, some of which can be fatal. In spite of the dangers, Bayer failed to warn doctors and patients about the risks of using Essure, and even hid evidence that it could hurt the people who took it.

22.

The victims behind these lawsuits sought to hold Bayer legally accountable for its actions by pursuing compensation for the following damages:  medical expenses, including the costs of surgery to remove the device or correct the medical complications it has caused; wages lost during recovery, reduced earning capacity due to the injuries suffered, and physical pain and suffering, among other items of recovery.

23.

As part of Defendant Unglesby's solicitations of RHA and Mr. Hodge, based on certain promises, assurances, and representations, Defendant Unglesby attempted and ultimately

persuaded RHA to pay significant marketing fees to gather Essure cases to file in a mass action forum, in particular, St. Louis, Missouri.

24.

Defendant Unglesby informed Mr. Hodge that he and his firm already had numerous mass action Essure cases filed in St. Louis, Missouri with the Holland Law Firm. Defendant Unglesby represented to Mr. Hodge that if RHA could successfully market and gather additional Essure cases with St. Louis plaintiffs who could act as anchors, RHA and UG could join such cases with some the Essure cases currently being prosecuted at the time by UG and the Holland Law firm. Defendant Unglesby referred to this joint collaboration as the "Essure Injury Campaign."

25.

Throughout 2017, Defendant Unglesby continued to lean heavily on RHA and Mr. Hodge to advance thousands of dollars in payments for the Essure Injury Campaign marketing efforts with the promise by Defendant Unglesby and UG and an understanding by RHA and Mr. Hodge that such cases would be prosecuted properly and effectively in St. Louis, Missouri, and that additional fees and costs, if needed, would be borne by UG.

**Defendant UG and Plaintiff RHA Executed the Essure Co-Counsel Agreement**

26.

Based on promises, assurances and representations made to Plaintiff by Defendants Unglesby and Greenberg and UG, on June 8, 2017, the two law firms, UG and RHA, ultimately executed a binding contract entitled "Essure Co-Counsel Agreement" as part of the Essure Injury Campaign. The Essure Co-Counsel Agreement was drafted and circulated to RHA by UG, through Defendants Unglesby and Greenberg.

27.

As part of the Essure Co-Counsel Agreement, the two law firms expressly agreed to certain obligations based on promises, assurances, and representations previously made by Defendants Unglesby and Greenberg and UG.  For example, UG agreed to pursue the following actions: (a) undertake marketing activity to identify individuals having potential Claims; (b) provide initial screening of the Claims using licensed attorneys ONLY; (c) cause persons with potential Claims to sign an Essure Representation Contract with a 40% contingency fee; and (d) provide RHA with a Complete Retainer Packet (as defined below) for each client with a potential Claim. UG also agreed to provide a statute of limitations determination for each Claim referred to RHA.

28.

Upon information and belief, Defendants Unglesby and Greenberg and UG contacted numerous other law firms, in addition to RHA, and induced such firms to enter into the same type of agreements as part of a similar campaign.

29.

Pursuant to the Essure Co-Counsel Agreement, a "Complete Retainer Packet" shall mean (a) an Essure Representation Contract signed by the client; (b) a HIPPA medical authorization signed by the client; and (c) a brief summary of the client's Claim.

30.

RHA agreed to pay UG significant funds to undertake the marketing activity. The Campaign would then commence upon receipt of marketing payments made by RHA. RHA also agreed to be responsible for advancing all costs necessary for preparing and prosecuting clients' cases, as well as maintaining all client communications.  RHA hired additional personnel, increased overhead, and paid additional client expenses in light of promises, assurances, and

representations made by and the agreements reached with Defendants Unglesby and Greenberg and UG.

31.

In order to fulfill its obligation to UG and their respective clients, RHA borrowed $1 million from the Small Business Administration (the "RHA SBA Loan").

32.

To date, RHA has fulfilled all of its obligations to UG and, more importantly, to their respective join clients under the Essure Co-Counsel Agreement.  Neither Defendants Unglesby, Greenberg, nor UG have ever claimed otherwise.

33.

Critically, as part of similar promises, assurances, and representations previously made by Defendants Unglesby, Greenberg, and UG and as part of the Essure Co-Counsel Agreement, the parties agreed at the outset of their relationship that "[u]pon conclusion of an individual client's Claim, the division of total net attorneys' fees owed from the client for the negotiated settlement or legal judgment shall be:  Eighty percent (80%) to RHA and twenty percent (20%) to UG." Because RHA was funding the Essure Injury Campaign, Defendants Unglesby, Greenberg, and UG promised and assured RHA and UG expressly agreed that any and all additional local counsel fees will be included in and satisfied by UG`s division of the legal fee.

34.

Each Essure Co-Counsel Agreement further contemplated that, in the event that a case settled prior to litigation such that a claim did not need to be filed, RHA would only pay 10% to UG.  Conversely, UG was set to earn 20% on each claim actually filed. All Essure claims at issue in this litigation were filed such that UG was entitled to earn 20% with UG agreeing that all

additional local counsel fees, if needed, will be included in and satisfied by UG`s division of the legal fee.

35.

In each Essure Co-Counsel Agreement, RHA further agreed that it would not deduct from the total attorney's fees any amounts paid to UG by RHA as marketing expenses.

36.

The Essure Co-Counsel Agreement was agreed to and signed by Defendant Greenberg on behalf of UG on June 8, 2017.

37.

On June 16, 2017, RHA, through Helping Hands Capital, LLC, wired an initial payment of $25,000.00 as a marketing fee to UG as required of RHA under the Essure Co-Counsel Agreement.

38.

Soon after, RHA, through Helping Hands Capital, LLC, wired a second payment of $25,000.00 as an additional marketing fee to UG as required of RHA under the Essure Co-Counsel Agreement to continue the two firm's joint marketing efforts to secure the representation of additional injured parties.

**UG and RHA Jointly Execute
a Series of Contracts for Representation of 43 Joint Essure Clients**

39.

Throughout the next few months, UG and RHA collectively signed Contracts for Representation with approximately 43 clients/plaintiffs who claimed injuries and other damages resulting from Bayer's Essure birth control device (the "Joint Essure Clients").

40.

Specifically, UG and RHA jointly and collectively executed Contracts for Representation

with the following 43 Joint Essure Clients on the following dates:

| UG/RHA ESSURE PLAINTIFFS' NAMES | CONTRACT FOR REPRSENTATION DATE OF EXECUTION |
| --- | --- |
| Veronica Arambula | June 8, 2017 |
| Paige Benson | June 21, 2017 |
| Lori Brood | July 15, 2017 |
| Michelle Branham | June 29, 2017 |
| Jennifer Carlson | June 27, 2017 |
| Elizabeth Claar | June 28, 2017 |
| Babette Cope | July 17, 2017 |
| Chelsea Crochet | June 19, 2017 |
| Amber Espinoza | August 7, 2017 |
| Tascha Farnsworth | July 11, 2017 |
| Jolene Fletcher Cline | July 14, 2017 |
| Sequdyah Franklin | July 13, 2017 |
| Jasmine Freeman | July 7, 2017 |
| Stephanie Huff | July 27, 2017 |
| Krizia Huling | July 4, 2017 |
| Tamika Jackson | July 3, 2017 |
| Brittany Jeffers | July 12, 2017 |
| Shamica Jones | July 19, 2017 |
| Jamie Kambarian | August 2, 2017 |
| Elaine Lathrum | June 20, 2017 |
| Maria Lopez | July 6, 2017 |
| Tamela Lowe | June 29, 2017 |
| Sheena Mackey | June 26, 2017 |
| Michelle Medina | June 20, 2017 |
| Katrina Mena | June 20, 2017 |
| April Mock | June 23, 2017 |
| Tiesha Mosley | June 26, 2017 |
| Elizabeth Neubert | July 10, 2017 |
| Sara Overturff | June 27, 2017 |
| Joann Pfaff | July 5, 2017 |
| Tamara Richardson | July 5, 2017 |
| Miquisha Ruffins | June 11, 2017 |
| Michelle Seiber | June 21, 2017 |
| Kristy Silvers | July 8, 2017 |
| Jessica Springman | July 2, 2017 |
| Juanita Smith | July 19, 2017 |
| Kizzy Starnes | July 14, 2017 |
| Michelle Thomas | June 23, 2017 |
| Brittany Veit | July 7, 2017 |

| | |
|---|---|
| Teralyn Webster | July 13, 2017 |
| Jodie White | July 5, 2017 |
| Michelle Williams | July 11, 2017 |
| Nikisha Williams | July 10, 2017 |

41.

As part of each of these joint representations and as per the executed Contracts for Representation with each of the 43 Joint Essure Clients, UG and RHA agreed to continue to abide by the Essure Co-Counsel Agreement signed between the firms on or about June 8, 2017.

42.

Each Contract for Representation signed separately by UG, RHA, and their respective clients was drafted and circulated by UG, through Defendant Unglesby and Defendant Greenberg, to RHA.

43.

Each Contract for Representation signed by and agreed to by UG and RHA contained the following fee division:

> It is agreed that Attorneys will divide the attorneys' fees in this matter, and Client agrees that participation of each firm and the division as follows:  90% to Ray Hodge & Associates and 10% to Unglesby & Greenberg LLC, in the event additional counsel is not needed; or **80% to Ray Hodge & Associates and 20% to Unglesby & Greenberg LLC, <u>in the event that additional counsel is needed, in which event Unglesby & Greenberg LLC will pay additional counsel fees out its share of the attorney's fees in this matter</u>**.

44.

In other words, each Contract for Representation made clear that if the joint representation matters did not require litigation, the split between the two firms shall be 90/10 with 90% to RHA and 10% to UG.  If the matters required litigation, which they all eventually did, the split would 80/20 with 80% to RHA and 20% to UG with UG expressly undertaking the obligation to pay any and all additional and/or local counsel fees, regardless of amount and regardless of recovery.

45.

UG and RHA further agreed in each Contract for Representation that "[e]ach firm assumes joint responsibility, including joint financial responsibility, for the representation, and, where required, the fee divisions be in proportion to the services performed by each firm."  Each Contract for Representation was agreed to and signed by either Defendant Unglesby or Defendant Greenberg based on the same promises, assurances, and representations each made to RHA prior to execution of the Contracts for Representation.

46.

By executing the Essure Co-Counsel Agreement and the Contracts for Representation of the Joint Essure Clients, Defendants UG, Unglesby, and Greenberg undertook significant fiduciary duties to each of the Joint Essure Clients by virtue of the attorney-client relationship as did RHA and Ryan Hodge.

47.

Despite making these promises, assurances, and representations, Defendants Unglesby Greenberg knew that Defendant UG was too undercapitalized to fulfill their respective contractual obligations to RHS as well as their ethical obligations to their Joint Essure Clients.

48.

RHA signed the Essure Co-Counsel Agreement  as well as each Contract for Representation based upon the promises, assurances, and representations made by UG, Defendant Unglesby and Defendant Greenberg that UG would undertake the obligation to pay any and all additional and/or local counsel fees, regardless of amount and regardless of recovery.  Such promises, assurances, and representations were made, in part, through oral conversations between

the parties as well as in each written draft Contract for Representation drafted and circulated by UG, through Defendant Unglesby and Defendant Greenberg, to RHA.

49.

In reliance on the numerous promises, assurances, and representations made by Defendants Unglesby, Greenberg, and UG as well as the Co-Counsel Agreement and Contracts for Representation executed by UG, RHA set about to obtain a loan to ensure that RHA fulfilled its financial duties and continued obligations to UG and, more importantly, to their collective clients for which UG and RHA shared joint responsibility. RHA began sending additional, significant marketing funds to UG in September of 2017.

50.

Throughout the second half of 2017 and beyond, RHA worked tirelessly in representing the interests of those 43 Joint Essure Clients to which UG and RHA jointly agreed to represent. Such efforts included but are not limited to the following:  travel by RHA to New Orleans, Louisiana to attend litigation strategy meetings with UG; receive and review substantial medical updates provided by UG to RHA; retaining and consulting with expert witnesses; obtaining and reviewing medical records of the joint clients; investigate and research numerous legal issues, including ensuring that statute of limitations were properly preserved; participating in and developing additional litigation strategy on an ongoing basis; and extensive ongoing and regular communications with the clients.

51.

During this same time, Defendants UG, Unglesby and Greenberg led RHA to believe that Defendants and RHA were united and together in the marketing of the prosecution of the Essure claims on behalf of the Joint Essure Clients and that Defendants UG, Unglesby and Greenberg

possessed sufficient funds to fulfill its contractual obligations owed to RHA and the Joint Essure Clients. Defendants UG, Unglesby and Greenberg did so knowing that it, in fact, did not have sufficient funds to cover its financial obligations and had no intention of ever doing so.

52.

Defendants UG, Unglesby and Greenberg further led RHA to believe that UG would also be acquiring cases of its own (but only through UG) as part of the overall litigation and marketing strategy so that UG would have sufficient funds to meet its financial obligations under the Co-Counsel Agreement and Contracts for Representation, including payment of any additional counsel fees under those same agreements.  Upon information and belief, unknown to RHA, and upon information and belief, Defendants UG, Unglesby and Greenberg were acquiring cases through another law firm in which Unglesby and/or Greenberg has or had financial and/or ownership interests in order to intentionally segregate assets into another separate entity; assets that could and should have been otherwise used to fulfill its financial obligations to RHA.  The actions of Defendants UG, Unglesby and Greenberg in this regard resulted in assets being improperly and fraudulently transferred from UG and out of the reach of potential creditors like RHA.

53.

Upon information and belief, Defendant UG obtained Essure cases and delivered them directly to Unglesby Law Firm or some other law firm in which Unglesby and/or Greenberg has or had financial and/or ownership interests without Defendant UG receiving compensation for the marketing efforts in securing those cases and without being paid the fees that Defendant UG would have been owed if Unglesby Law Firm (or some similar firm) had in place the same or similar type of contract in place as Defendant UG did with RHA. To the extent that such cases were acquired

through the marketing efforts of Defendant UG for which it received no compensation, Defendant

UG allowed valuable assets to be siphoned off by its two members, Defendants Unglesby and

Greenberg, to protect those assets from potential creditors.

### Defendants Bail on RHA and the Joint Essure Clients
### When the Joint Litigation Hits a Bump in the Road

54.

UG egngaged Mr. Eric Holland and the Holland Law Firm in St. Louis, Missouri, who

intended to file all of the Essure Joint Cases involving the clients jointly represented by UG and

RHA in St. Louis, Missouri as a mass action.  As required by the Co-Counsel Agreement and

Contracts of Representation, UG agreed to cover the costs of Mr. Holland's fees regardless of the

amount and regardless of recovery and/or ultimate success of the litigation.

55.

Ultimately, the United States Supreme Court issued a landmark jurisdiction decision

related to mass actions and out-of-state plaintiffs in *Bristol-Myers Squibb Co., v. Superior Court

of California, San Francisco County, et al.*, 137 S.Ct. 1773 (2017).  The Court held that a state

court could not exercise personal jurisdiction over nonresident plaintiffs' claims against a

nonresident company in mass tort actions.  The *Bristol-Myers* decision effectively prevented the

filing of out-of-state plaintiffs in mass actions.  As such, UG's plan to litigate the claims of those

Joint Essure Clients jointly represented by UG and RHA in St. Louis, Missouri with Mr. Holland's

firm went out the door.

56.

Significantly, despite leading the litigation strategy to this point, UG had no contingency plan in place on how or where to proceed with the claims of those Joint Essure Clients jointly represented by UG and RHA.

57.

At various time during the first half of 2018, Mr. Hodge repeatedly and regularly attempted to contact UG to develop a plan on how to save the joint representations agreed to by both firms and their respective attorneys but Defendant Unglesby and Defendant Greenberg showed little interest in remaining involved given these new developments despite inducing RHA to join UG's efforts through repeated promises and by executing and agreeing to the Co-Counsel Agreement and Contracts for Representation.

58.

Eventually, Mr. Hodge and Defendant Unglesby spoke and Defendant Unglesby recommended using Mr. Greg Bubalo and his firm, Bubalo Law, PLC, in Louisville, Kentucky to file the UG/RHA cases on behalf of the Joint Essure Clients in Pennsylvania and Indiana.

59.

Before formally referring the cases to Mr. Bubalo, Mr. Hodge investigated and found other options for local counsel and presented those options to UG. For example, on February 14, 2019, Mr. Hodge emailed Mr. Unglesby explaining that:

> I have found other attorneys that will happily take the cases at a 50% fee split. Since our agreement gives you discretion on which law firm to send cases, I need to know what you want to do. As you are aware, our contract requires that I pay you 20% of the fee and [your firm] covers all attorney's fees if these cases go into litigation. At a 25% fee arrangement, there is a significant shortfall from our contractual arrangement which at some point you will need to make up.

60.

Over the next several weeks and months, Defendant Unglesby and Defendant Greenberg ignored Mr. Hodge and feigned ignorance of UG's numerous promises, assurances, and representations made to RHA as well as its clear and unequivocal contractual obligations.  More significantly, at this time, neither UG nor Defendant Unglesby nor Defendant Greenberg demonstrated to RHA any interest in attempting to stay involved in the cases to which they agreed to jointly prosecute and fulfilling their promises and obligations made to RHA and the Essure Joint Clients.

61.

On or about March 20, 2019, Defendant Unglesby finally spoke to Mr. Hodge.  During the call, Defendant Unglesby advised Mr. Hodge that he "was on his own" with respect to continuing the joint UG/RHA cases and that UG had no interest in selecting any additional or local counsel to litigate the cases in an appropriate forum let alone pay for such additional or local counsel.  Mr. Hodge reiterated his goal and, indeed, his obligation to continue to work together with UG on behalf of their 43 Joint Essure Clients for their protection and pursuant to their respective written agreements.  As Mr. Hodge explained, "[a]ny differences we may have can be resolved after we have helped our clients recover for the wrongs done to them. I harbor no ill will against you and hope that cooler heads will prevail sometime soon so that we can continue to try to work together to help our respective clients."

62.

Left with no meaningful alternative, RHA referred the joint UG/RHA cases to Mr. Greg Bubalo and Bubalo Law, PLC, as per UG's prior recommendation. In order to save the cases to which UG and RHA agreed to jointly prosecute, Bubalo Law required 60% of the total fees otherwise due to RHA and UG in order to file and pursue the claims in Pennsylvania and Indiana.

63.

Since February of 2019, Defendant UG and UG's defendant members have failed to participate in any respect in prosecuting the claims on behalf of the Joint Essure Clients to which they agreed to represent.

64.

By executing the Essure Co-Counsel Agreement with RHA and the Contracts for Representation with each of the Joint Essure Clients, Defendants UG, Unglesby, and Greenberg undertook significant fiduciary duties owed to each of the Joint Essure Clients by virtue of the attorney-client relationship as did RHA and Mr. Hodge.

65.

At the point in time in which Defendants UG and Unglesby walked away from their clients by advising RHA and Mr. Hodge that he "was on his own" with respect to continuing the joint UG/RHA cases and that UG had no interest in fulfilling its financially obligations to the Joint Essure Clients, Defendant UG and UG's defendant members not only breached their contract with RHA but they breached their significant fiduciary duties and obligations owed to each of the Joint Essure Clients. But for RHA assuming those fiduciary duties owed by Defendants UG, Unglesby, and Greenberg to the Joint Essure Clients, Defendants UG, Unglesby, and Greenberg would have left all 43 clients without adequate, competent representation.

66.

RHA and Mr. Hodge fulfilled their fiduciary obligations to the 43 Joint Essure Clients. Defendants UG, Unglesby, and Greenberg walked away from and breached their fiduciary

obligations to those same clients. RHA alone assumed the fiduciary duties otherwise owed by Defendants UG, Unglesby, and Greenberg to the Joint Essure Clients to the detriment of and at a substantial loss to RHA as a result of Defendants' intentional breach of their contract with RHA and their breach of their fiduciary duties to all 43 Joint Essure clients.

### The Consequences of Defendants' Conduct

67.

As a result of the Defendants' conscious decision to misrepresent and omit truthful information to Plaintiff in the inducement of a joint collaboration, to make certain promises and assurances, and then to abandon their obligations to Plaintiff under the Co-Counsel Agreement and Contracts of Representation after securing thousands of dollars in advance payments from Plaintiff, RHA has been forced to cover any and all costs of the "local and/or additional counsel fees" **for which UG was solely and contractually responsible**. UG entered into various agreements, written and prepared by UG and its defendant members, with the express understanding that UG – not RHA – would cover such additional fees. As soon as it appeared that such costs would escalate significantly, Defendants UG, Unglesby, and Greenberg walked away from their obligations and duties to RHA. As such, in retrospect, it is now clear that Defendants UG, Unglesby, and Greenberg never intended to honor the repeated promises, assurances, and representations made to RHA as well as their obligations under the Co-Counsel Agreement and Contracts of Representation despite receiving $50,000.00 in marketing fees from RHA.

68.

Without UG's assistance, RHA, in consultation with Bubalo Law, PLC, successfully resolved the claims of its clients to which UG and RHA agreed to jointly represent and prosecute.

69.

On or about December 23, 2021, Bubalo Law, PLC began distributing the proceeds from the resolution of these cases, including the attorney's fees owed to RHA.  The total attorney's fees on the cases RHA was forced to refer to Bubalo Law, PLC in order to save the prosecution of such claims totaled $1,374.684.30.  Of that $1,374,684.30, RHA has or will receive $549,873.72, after deducting the 60% owed to Bubalo Law, PLC and other local attorneys Bubalo was forced to retain – costs and expenses which UG was contractually obligated to pay.  Distribution of the proceeds to RHA by Bubalo Law, PLC from the resolution of these cases, including the attorney's fees owed to RHA, remains ongoing as of the date of this filing, although RHA has received the vast majority of the final proceeds.

70.

By virtue of Defendants' intentional misrepresentations as well as their breach of its promises, assurances, and representations to RHA as well as its obligations under the Co-Counsel Agreement and the various Contracts of Representation – to which UG agreed to cover the costs of all additional attorney's fees regardless of the amount and regardless of recovery – RHA received approximately $549,873.72 **less** in attorney's fees that it would have otherwise received under such contracts.

71.

Defendants UG, Unglesby, and Greenberg walked away from and breached their fiduciary obligations to those same clients. RHA alone assumed the fiduciary duties otherwise owed by Defendants UG, Unglesby, and Greenberg to the Joint Essure Clients to the detriment of and at a

substantial loss to RHA as a result of Defendants' intentional breach of their contract with RHA and their breach of their fiduciary duties to all 43 Joint Essure clients

72.

As a result, the actions and failures of Defendants UG, Unglesby, and Greenberg have substantially damaged RHA. The current damages sustained by RHA totals approximately $549,873.72, exclusive of interest.

73.

On or about April 14, 2022, RHA sent written notice to Defendants UG, Unglesby, and Greenberg regarding its breach of its promises, assurances, and representations to RHA as well as its obligations under the Co-Counsel Agreement and the various Contracts of Representation and provided all Defendants with an opportunity to cure such breaches. To date, Defendants UG, Unglesby, and Greenberg have refused to do so.

## V.  LEGAL CLAIMS BY PLAINTIFF

### Count 1 – Breach of Contract by Defendant UG

74.

Plaintiff realleges and incorporates by reference all of the above allegations in the preceding paragraphs as though such allegations are repeated and fully set forth in this claim.

75.

Pursuant to Louisiana Civil Code Articles 1994 and 1995, UG breached its written contracts with RHA signed and agreed to in 2017. More specifically, UG breached its obligations under the Co-Counsel Agreement whereby UG expressly agreed that "any and all additional local

counsel fees" shall be borne by UG and not RHA.  To date, UG has failed to compensate RHA for approximately $549,873.72 in "additional" attorney's fees RHA was forced to pay but which UG was contractually obligated to satisfy.

76.

UG also breached its obligations under 43 separate Contracts for Representation signed by and agreed to by UG contained the following fee division:

> It is agreed that Attorneys will divide the attorneys' fees in this matter, and Client agrees that participation of each firm and the division as follows:  90% to Ray Hodge & Associates and 10% to Unglesby & Greenberg LLC, in the event additional counsel is not needed; or 80% to Ray Hodge & Associates and 20% to Unglesby & Greenberg LLC, **in the event that additional counsel is needed, in which event Unglesby & Greenberg LLC will pay additional counsel fees out its share of the attorney's fees in this matter**.

To date, UG has failed to compensate RHA for approximately $549,873.72 in "additional" attorney's fees RHA was forced to pay but which UG was contractually obligated to satisfy regardless of amount and regardless of recovery.

77.

By virtue of UG's breach contractual obligations under the Co-Counsel Agreement and the various Contracts of Representation – to which UG agreed to cover the costs of all additional attorney's fees regardless of the amount and regardless of recovery – the current damages sustained by RHA totals approximately $549,873.72, exclusive of interest.

**Count 2 – Detrimental Reliance as to All Defendants**

78.

Plaintiff realleges and incorporates by reference all of the above allegations in the preceding paragraphs as though such allegations are repeated and fully set forth in this claim.

24

79.

RHA states a cause of action against all Defendants for detrimental reliance.  Pursuant to Civil Code Article 1967, Defendants UG, Unglesby and Greenberg are each liable in their own right for the damages they caused RHA based on numerous promises, assurances, and representations made to RHA on which RHA reasonably relied.

80.

More specifically, RHA relied on Defendants' repeated verbal promises as well as clear and unequivocal expressed written promises contained in the Co-Counsel Agreement and each of the 43 Contracts of Representation presented to RHA whereby Defendants UG, Unglesby and Greenberg knowingly and repeatedly promised that (1) "any and all additional local counsel fees" shall be borne by UG and not RHA; and (2) in the event that "additional counsel" is needed in the prosecution of the joint UG/RHA Essure claims, Defendant Unglesby & Greenberg, LLC would pay for such additional counsel fees.

81.

RHA relied on such promises made by Defendants UG, Unglesby, and Greenberg and, as a result, made the decision to execute the Co-Counsel Agreement and Contracts for Representation and to set then about to obtain a loan to ensure that RHA fulfilled its continued financial obligations to UG and, more importantly, to their collective Joint Essure Clients for which UG and RHA shared joint responsibility.

82.

By virtue of RHA's reasonable reliance on the promises made by Defendants UG, Unglesby, and Greenberg – including the repeated promises to RHA that UG would cover the costs of any and all "local" and "additional" attorney's fees regardless of the amount and regardless of

recovery – the current damages sustained by RHA totals approximately $549,873.72, exclusive of interest.

83.

RHA's detrimental reliance claim is derived, in significant part, from a breach of the numerous repeated verbal promises as well as the clear and unequivocal expressed written promises contained in the Co-Counsel Agreement and each of the 43 Contracts of Representation as well as obligations owed by Defendants UG, Unglesby, and Greenberg to RHA. As such, RHA's detrimental reliance claim is contractual in nature and subject to a ten-year prescriptive period pursuant to Louisiana Civil Code Article 3499.

**Count 3 – Fraud Against a Party to a Contract as to All Defendants**

84.

Plaintiff realleges and incorporates by reference all of the above allegations in the preceding paragraphs as though such allegations are repeated and fully set forth in this claim.

85.

Defendants UG, Unglesby and Greenberg misrepresented, suppressed, and omitted pertinent, truthful information in order to induce RHA to enter into the Co-Counsel Agreement and each of the 43 Contracts of Representation in order to secure significant marketing fees  and other gains from RHA for Defendants' own use, including the marketing of cases for which Defendants referred out to separate law firms in which Unglesby and Greenberg has or had financial and/or ownership interests, to ensure RHA's active involvement in the joint representation of the Joint Essure Clients while failing to inform RHA of Defendants' true intentions and securing cases outside of the Joint Essure Client relationship through a separate

entity (again, in which Unglesby and Greenberg has or had financial and/or ownership interests) for the sole benefit of Defendants and the detriment of RHA.

86.

Defendant UG knew or should have known at the inception of entering into the Co-Counsel Agreement with RHA that diverting cases to another firm or legal entity would leave Defendant UG woefully undercapitalized and incapable of fulfilling its contractual obligations to RHA as well as the Joint Essure Clients pursuant to the Contracts of Representation.

87.

In addition, Defendants UG, Unglesby and Greenberg led RHA to believe that Defendants and RHA were united and together in the marketing of the prosecution of the Essure claims on behalf of the Joint Essure Clients and that Defendants UG, Unglesby and Greenberg possessed sufficient funds to fulfill its contractual obligations owed to RHA and the Joint Essure Clients. Defendants UG, Unglesby and Greenberg did so knowing that it, in fact, did not have sufficient funds to cover its financial obligations and had no intention of ever doing so.

88.

Defendants UG, Unglesby and Greenberg further led RHA to believe that UG would also be acquiring cases of its own (but only through UG) as part of the overall litigation and marketing strategy so that UG would have sufficient funds to meet its financial obligations under the Co-Counsel Agreement and Contracts for Representation, including payment of any additional counsel fees under those same agreements.  Unknown to RHA, and upon information and belief, Defendants UG, Unglesby and Greenberg were acquiring cases through another law firm in which Unglesby and Greenberg has or had financial and/or ownership interests in order to intentionally segregate assets into another entity that should have been otherwise used to fulfill its financial

obligations to RHA.   The actions of Defendants UG, Unglesby and Greenberg in this regard resulted in assets being improperly and fraudulently transferred from UG and out of the reach of potential creditors like RHA.

89.

In order to induce RHA to enter into a contractual relationship with them, Defendants UG, Unglesby and Greenberg made verbal promises as well as clear and unequivocal expressed written promises contained in the Co-Counsel Agreement and each of the 43 Contracts of Representation presented to RHA knowing that such promises would not be met and further misrepresenting its intention to fulfill its obligations.   Specifically, Defendants UG, Unglesby and Greenberg knowingly and repeatedly promised that (1) "any and all additional local counsel fees" shall be borne by UG and not RHA; and (2) in the event that "additional counsel" is needed in the prosecution of the joint UG/RHA Essure claims, Defendant Unglesby & Greenberg, LLC would pay for such additional counsel fees. However,  Defendants UG, Unglesby and Greenberg made such assurances, representations, and promises knowing that it could not and would fulfill its financial obligations.

90.

RHA relied on such assurances, representations, and promises made by Defendants UG, Unglesby, and Greenberg and, as a result, made the decision to execute the Co-Counsel Agreement and Contracts for Representation and then set about to obtain the RHA SBA Loan to ensure that RHA fulfilled its continued financial obligations to UG and, more importantly, to their collective Joint Essure Clients for which UG and RHA shared joint responsibility.

91.

By virtue of RHA's reasonable reliance on the assurances, representations, and promises made by Defendants UG, Unglesby, and Greenberg, including the repeated promises to RHA that UG would cover the costs of any and all "local" and "additional" attorney's fees regardless of the amount and regardless of recovery – all of which turned out to be false – the current damages sustained by RHA totals approximately $549,873.72, exclusive of interest.

92.

As a result of the fraudulent misrepresentations made by and the concealment of truthful information on the part Defendants UG, Unglesby, and Greenberg, RHA has been forced to cover any and all costs of the "local and/or additional counsel fees" for which UG was solely and contractually responsible in order to satisfy RHA's obligations to the Joint Essure Clients. Defendants, on the other hand, never intended to honor those same obligations.  UG entered into various agreements, written and prepared by UG and its defendant members, with the express understanding that UG – not RHA – would cover such additional fees.  Defendants UG, Unglesby, and Greenberg walked away from its obligations and duties to RHA. Defendants UG, Unglesby, and Greenberg never intended to honor the repeated promises, assurances, and representations made to RHA as well as their obligations under the Co-Counsel Agreement and Contracts of Representation despite receiving $50,000.00 in marketing fees from RHA all the while profiting and benefitting from Essure cases secured by Defendants outside of the Joint Essure Client relationship between Defendants and RHA.

**Count 4 – Individual Liability Based Upon Fraudulent Conduct
Pursuant to La. R.S. 12:1320(D) as to Defendants Unglesby and Greenberg**

93.

Plaintiff realleges and incorporates by reference all of the above allegations in the preceding paragraphs as though such allegations are repeated and fully set forth in this claim

94.

La. R.S. 12:1320(D) permits a cause of action by RHA against Defendants Unglesby and Greenberg in their respective individual capacities as member, manager, employee, or agent of Defendant UG, a Louisiana limited liability company, because of "fraud practiced upon" RHA.

95.

Defendants Unglesby and Greenberg committed fraud against RHA by misrepresenting, suppressing, and omitting true and pertinent information in order to induce RHA to enter into the Co-Counsel Agreement and each of the 43 Contracts of Representation in order to secure significant marketing fees  and other gains from RHA for Defendants' own use, including the marketing of cases for which Defendants referred out to law firms in which Unglesby and Greenberg has or had financial and/or ownership interests, to ensure RHA's active involvement in the joint representation of the Joint Essure Clients while failing to inform RHA of Defendants' true intentions and securing cases outside of the Joint Essure Client relationship for the sole benefit of Defendants and the detriment of RHA.

96.

In addition, Defendants UG, Unglesby and Greenberg led RHA to believe that Defendants and RHA were united and together in the marketing of the prosecution of the Essure claims on behalf of the Joint Essure Clients and that Defendants UG, Unglesby and Greenberg possessed sufficient funds to fulfill its contractual obligations owed to RHA and the Joint Essure Clients. Defendants UG, Unglesby and Greenberg did so knowing that it, in fact, did not have sufficient funds to cover its financial obligations and had no intention of ever doing so.

97.

Defendants UG, Unglesby and Greenberg further led RHA to believe that UG would also be acquiring cases of its own (but only through UG) as part of the overall litigation and marketing strategy so that UG would have sufficient funds to meet its financial obligations under the Co-Counsel Agreement and Contracts for Representation, including payment of any additional counsel fees under those same agreements.  Unknown to RHA, and upon information and belief, Defendants UG, Unglesby and Greenberg were acquiring cases through another law firm in order to intentionally segregate assets into another, separate entity in which Unglesby and Greenberg has or had financial and/or ownership interests that should have been otherwise used to fulfill its financial obligations to RHA.  The actions of Defendants UG, Unglesby and Greenberg in this regard resulted in assets being improperly and fraudulently transferred from UG and out of the reach of potential creditors like RHA.

98.

Moreover, in order to induce RHA to enter into a contractual relationship with them, Defendants Unglesby and Greenberg made verbal promises as well as clear and unequivocal expressed written promises contained in the Co-Counsel Agreement and each of the 43 Contracts of Representation presented to RHA knowing that such promises would not be met and further misrepresenting its intention to fulfill its obligations.  Specifically, Defendants UG, Unglesby and Greenberg knowingly and repeatedly promised that (1) "any and all additional local counsel fees" shall be borne by UG and not RHA; and (2) in the event that "additional counsel" is needed in the prosecution of the joint UG/RHA Essure claims, Defendant Unglesby & Greenberg, LLC would pay for such additional counsel fees. However,  Defendants Unglesby and Greenberg made such

assurances, representations, and promises knowing that it could not and would fulfill its financial obligations.

99.

RHA relied on such the fraudulent assurances, representations, and promises made by Defendants Unglesby and Greenberg and, as a result, made the decision to execute the Co-Counsel Agreement and Contracts for Representation and to set then about to obtain the RHA SBA Loan to ensure that RHA fulfilled its continued financial obligations to UG and, more importantly, to their collective Joint Essure Clients for which UG and RHA shared joint responsibility.

100.

By virtue of RHA's reasonable reliance on the fraudulent assurances, representations, and promises made by Defendants Unglesby and Greenberg, including the repeated promises to RHA that UG would cover the costs of any and all "local" and "additional" attorney's fees regardless of the amount and regardless of recovery – all of which turned out to be false – the current damages sustained by RHA totals approximately $549,873.72, exclusive of interest.

101.

As a result of the fraudulent misrepresentations made by and the concealment of truthful information on the part Defendants Unglesby and Greenberg, RHA has been forced to cover any and all costs of the "local and/or additional counsel fees" for which UG was solely and contractually responsible.  UG entered into various agreements, written and prepared by UG and its defendant members, with the express understanding that UG – not RHA – would cover such additional fees.  Defendants UG, Unglesby, and Greenberg walked away from its obligations and duties to RHA. Defendants UG, Unglesby, and Greenberg never intended to honor the repeated promises, assurances, and representations made to RHA as well as their obligations under the Co-

Counsel Agreement and Contracts of Representation despite receiving $50,000.00 in marketing fees from RHA all the while profiting and benefitting from Essure cases secured by Defendants outside of the Joint Essure Client relationship between Defendants and RHA.

102.

As such, Defendants Unglesby and Greenberg are liable to RHA in their respective individual capacities as member, manager, employee, or agent of Defendant UG, a Louisiana limited liability company, based upon the fraudulent conduct alleged herein and to be proven at trial of this matter.

**Count 5 – Declaratory Relief as to Defendant UG**

103.

Plaintiff realleges and incorporates by reference all of the above allegations in the preceding paragraphs as though such allegations are repeated and fully set forth in this claim.

104.

An actual justiciable controversy between Plaintiff and UG exists within the meaning of 28 U.S.C. § 2201 regarding the rights and obligation of Defendants under the written contracts at issue, including whether Defendants are required to reimburse Plaintiff for the costs and expenses necessitated by the hiring of additional counsel in the prosecution of Essure claims; costs and expenses to which UG contractually obligated itself to pay.

105.

Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, RHA in good faith requests that the Court declare the following:

    (a)    UG is bound by the terms and conditions of the Co-Counsel Agreement and all 43 Contracts for Representation at issue;

33

(b)   To date, UG has failed to compensate RHA for approximately $549,873.72 in "additional" attorney's fees it was forced to pay but which UG was contractually obligated to satisfy regardless of amount and regardless of recovery; and

(C)   UG's failure in this regard represents and/or constitutes a breach of the Co-Counsel Agreement and all 43 Contracts for Representation at issue.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ray Hodge & Associates, LLC prays that Defendants Unglesby and Greenberg, LLC; Lance C. Unglesby; and Logan H. Greenberg be served with a copy of this Complaint and cited to appear and answer same, and that after due proceedings, including a jury trial, are had, there by judgment in favor of Plaintiff and against all Defendants for monetary amounts in the amount of $549,873.72, together with legal interest thereupon from the date of judicial demand until paid.

Plaintiff further prays for a declaratory judgment declaring that UG is bound by the terms and conditions of the Co-Counsel Agreement and all 43 Contracts for Representation at issue; that, to date, UG has failed to compensate RHA for approximately $549,873.72 in "additional" attorney's fees RHA was forced to pay but which UG was contractually obligated to satisfy regardless of amount and regardless of recovery; and UG's failure in this regard represents and/or constitutes a breach of the Co-Counsel Agreement and all 43 Contracts for Representation at issue.

Plaintiff prays for all other general and equitable relief to which it is entitled.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a TRIAL BY JURY in this action.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a TRIAL BY JURY in this action.

## VERIFICATION

I, Ryan Hodge, on behalf of Plaintiff Ray Hodge & Associates, LLC, hereby verify under penalty of perjury that I have read the above Complaint and the allegations and content therein. I also hereby verify that, to the best of my knowledge, belief, and recollection, the matters stated in this Complaint are true and correct.

_____
Ryan Hodge

Dated:  March 27 2023                        Respectfully submitted:

/s/ K. Todd Wallace
K. Todd Wallace, T.A. (Bar #25920)
todd.wallace@walmey.com
Stacey LaGraize Meyaski (Bar #27543)
stacey.meyaski@walmey.com
Mary L. Audiffred (Bar #39405)
mary.audiffred@walmey.com
WALLACE MEYASKI, LLC
5190 Canal Blvd., Suite 102
New Orleans, LA  70124
Telephone:  (504) 644-2011
Facsimile:  (504) 644-2010

ATTORNEYS FOR PLAINTIFF
RAY HODGE & ASSOCIATES, LLC